FILED'03 MAR 18 10:39USDC-ORM

**Tom Lindley**, OSB No. 85060, tlindley@perkinscoie.com
**Austin W. Crowe**, OSB No. 65028, acrowe@perkinscoie.com
**Peggy L. Crane**, OSB No. 01238; pcrane@perkinscoie.com
PERKINS COIE LLP
PacWest Center, Suite 1500
1211 S.W. Fifth Avenue
Portland, OR 97204-3715
Telephone: (503) 727-2000
Facsimile: (503) 727-2222

Attorneys for Plaintiffs

ORIGINAL

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

ALLEN E. BURNS, JOANN A. BURNS, MICHAEL A. CORNACHIONE, HARRIET S. CORNACHIONE, JEFFREY A. DEVISH, STACI M. DEVISH, RICHARD GIBSON, SUSAN D. GIBSON, MICHAEL S. HOMFELDT, SOPHIA A. HOMFELDT, KIL NAM LEE, YOON C. LEE, KELLEY R. MINGUS, ANGELINA A. MINGUS, ANDREW E. PETERSON, REBECCA L. PETERSON, KAREN WILSON SELIM, JAMES DAVID SELIM, DANIEL B. STEARNS, SHAW NEE STEARNS, RON J. VILLA, JESSICA J. VILLA, JENNY M. WALLE, NEIL M. WALLE, DENNIS E. WINN, and CAROLYN R. WINN,

Plaintiffs,

v.

MBK PARTNERSHIP, an Oregon partnership, MELVIN L. STEWART, MARY LOU STEWART, MAURICE E. BERCOT, KENNETH L. TUTTLE, individually and as Trustee of the KENNETH L. TUTTLE M.D., P.C. EMPLOYEE PENSION AND PROFIT SHARING PLAN AND TRUST FOR KENNETH L. TUTTLE, LISA M. STEWART, and M.L. STEWART, INC., an Oregon Corporation,

Defendants.

NO.

**COMPLAINT**
**(CERCLA Cost Recovery and Contribution; Oregon Superfund; Declaratory Relief; RICO; Unfair Trade Practices; Fraud; and Negligence)**

**DEMAND FOR JURY TRIAL**



**Perkins Coie LLP**
1211 S.W. Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2000
Fax: (503) 727-2222

Plaintiffs Allen E. Burns, Joann A. Burns, Michael A. Cornachione, Harriet S. Cornachione, Jeffrey A. Devish, Staci M. Devish, Richard Gibson, Susan D. Gibson, Michael S. Homfeldt, Sophia A. Homfeldt, Kil Nam Lee, Yoon C. Lee, Kelley R. Mingus, Angelina A. Mingus, Andrew E. Peterson, Rebecca L. Peterson, James David Selim, Karen Wilson Selim, Daniel B. Stearns, Shaw Nee Stearns, Ron J. Villa, Jessica J. Villa, Jenny M. Walle, Neil M. Walle, Dennis E. Winn, and Carolyn R. Winn (hereinafter "Homeowners") allege as follows:

**THE PARTIES**

1.

Plaintiffs Allen E. and Joann A. Burns (the "Burnses") are individuals who reside in Klamath County, Oregon.

2.

Plaintiffs Michael A. and Harriet S. Cornachione (the "Cornachiones") are individuals who reside in Klamath County, Oregon.

3.

Plaintiffs Jeffrey A. and Staci M. Devish (the "Devishes") are individuals who reside in Klamath County, Oregon.

4.

Plaintiffs Richard and Susan D. Gibson (the "Gibsons") are individuals who reside in Klamath County, Oregon.

5.

Plaintiffs Michael S. and Sophia A. Homfeldt (the "Homfeldts") are individuals who reside in Klamath County, Oregon.



**Perkins Coie LLP**
1211 S.W. Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2000
Fax: (503) 727-2222

6.

Plaintiffs Kil Nam and Yoon C. Lee (the "Lees") are individuals who reside in Klamath County, Oregon.

7.

Plaintiffs Kelley R. and Angelina A. Mingus (the "Minguses") are individuals who reside in Klamath County, Oregon.

8.

Plaintiffs Andrew E. and Rebecca L. Peterson (the "Petersons") are individuals who reside in Klamath County, Oregon.

9.

Plaintiffs James David and Karen Wilson Selim (the "Selims") are individuals who reside in Klamath County, Oregon.

10.

Plaintiffs Daniel B. and Shaw Nee Stearns (the "Stearnses") are individuals who reside in Klamath County, Oregon.

11.

Plaintiffs Ron J. and Jessica J. Villa (the "Villas") are individuals who reside in Klamath County, Oregon.

12.

Plaintiffs Neil M. and Jenny M. Walle (the "Walles") are individuals who reside in Klamath County, Oregon.

13.

Plaintiffs Dennis E. and Carolyn R. Winn (the "Winns") are individuals who reside in Klamath County, Oregon.



**Perkins Coie LLP**
1211 S.W. Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2000
Fax: (503) 727-2222

14.

Defendant MBK Partnership ("MBK") is an Oregon partnership consisting of Melvin L. Stewart ("Stewart"), Mary Lou Stewart, and Kenneth L. Tuttle ("Tuttle"), Trustee of the Kenneth L. Tuttle, M.D., P.C. Employee Pension and Profit Sharing Plan and Trust for Kenneth L. Tuttle ("Tuttle Trust"). MBK's principal place of business is at 5761 Glenridge Way, Klamath Falls, Oregon.

15.

Defendant Stewart is an individual who resides in Klamath County, Oregon.

16.

Defendant Mary Lou Stewart is an individual who resides in Klamath County, Oregon.

17.

Defendant Maurice E. Bercot ("Bercot") is an individual who resides in Klamath County, Oregon.

18.

Defendant Kenneth L. Tuttle ("Tuttle") is an individual who resides in Klamath County, Oregon. Tuttle is also Trustee of the Tuttle Trust.

19.

Defendant Lisa M. Stewart is an individual who resides in Klamath County, Oregon.

20.

Defendant M.L. Stewart, Inc., is an Oregon corporation with its principal place of business at 5761 Glenridge Way, Klamath Falls, Oregon.

**JURISDICTION AND VENUE**

21.

This action arises under 42 U.S.C. §§ 9607 and 9613 and 18 U.S.C. § 1964. This Court therefore has jurisdiction of the subject matter of this action pursuant to 28 U.S.C. § 1331. The



**Perkins Coie LLP**
1211 S.W. Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2000
Fax: (503) 727-2222

Court has supplemental jurisdiction over the claims made pursuant to Oregon law under 28 U.S.C. § 1367(a).

22.

Venue is proper in this district pursuant to 28 U.S.C. § 1391, 42 U.S.C. §§ 9607 and 9713(b), and 18 U.S.C. § 1965, in that the claims arose in the District of Oregon. This Court has jurisdiction over the parties pursuant to ORCP 4 and other applicable authority.

**GENERAL ALLEGATIONS**

23.

The Homeowners own property in a subdivision in Klamath Falls, Oregon, known as North Ridge Estates.

**Chain of Title for North Ridge Estates**

24.

North Ridge Estates was at one time part of a parcel of land owned by the United States (the "Property") on which the United States Navy ("Navy") built the Marine Recuperational Barracks (the "Barracks"), a facility for soldiers recovering from tropical diseases. The United States acquired the Property in 1944. In 1946, the Navy closed the Barracks and declared the Property surplus.

25.

In 1947, the Navy conveyed the Property to the State of Oregon, which used the Property as the original location of the Oregon Technical Institute ("OTI"). The Property reverted back to the United States in 1964, when the State of Oregon ceased to use it for the OTI.

26.

On or about February 3, 1966, Julius Levine, Nathan Engleberg, Jacob Feinstein, Morris Stark, and Jerome Kaufman (collectively, the "Levine group") acquired title to the portion of the Property that would become North Ridge Estates.



**Perkins Coie LLP**
1211 S.W. Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2000
Fax: (503) 727-2222

27.

On or about December 21, 1977, the Levine group conveyed the North Ridge Estates parcel to Stewart, Bercot, and Tuttle, as Trustee of the Tuttle Trust.

28.

Upon information and belief, some time prior to September 17, 1979, Stewart, Bercot, and Tuttle, as Trustee for the Tuttle Trust, transferred their interest in the North Ridge Estates parcel to MBK.

**MBK Partnership**

29.

Upon information and belief, MBK was formed in or before 1977. It originally consisted of three partners: Stewart, Bercot, and Tuttle as Trustee for the Tuttle Trust.

30.

Sometime in 1989, Bercot withdrew as a partner in MBK.

31.

Sometime in 1989, Mary Lou Stewart became a partner in MBK.

**History of Asbestos Contamination in North Ridge Estates**

32.

The Marine Recuperational Barracks, built on the Property by the United States, consisted of approximately 80 buildings.

33.

These buildings were sided with cement asbestos board ("CAB") and contained asbestos insulation, roofing materials, floor tiles, and other asbestos-containing materials ("ACM"). The buildings were also heated by steam heat and were connected by a series of buried steam pipes which were wrapped in asbestos-containing insulation.



**Perkins Coie LLP**
1211 S.W. Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2000
Fax: (503) 727-2222

34.

Upon information and belief, sometime between 1972 and 1974, the Levine group demolished or contracted to have demolished some, but not all, of the buildings that comprised the Barracks.

35.

Upon information and belief, this demolition conducted or directed by the Levine group left asbestos-containing waste materials ("ACWM"), including CAB and insulation, scattered on four to five acres of North Ridge Estates.

36.

Upon information and belief, the Levine group did not clean up the ACWM, but instead sold the property to Stewart, Bercot, and Tuttle as Trustee of the Tuttle Trust.

37.

At the time that Stewart, Bercot, and Tuttle as Trustee of the Tuttle Trust acquired North Ridge Estates, several buildings with ACM remained standing on the property, yet to be demolished.

38.

On or about September 17, 1979, after MBK acquired North Ridge Estates, the United States Environmental Protection Agency ("EPA") issued a Compliance Order under the Clean Air Act, 42 U.S.C. § 7413, (the "Order") to MBK for asbestos violations. A copy of this Order is attached hereto as Exhibit A. The Order was issued to ensure that the company would operate its building demolition in compliance with the NESHAPS regulation for asbestos.

39.

The Order cited MBK for causing or permitting quantities of ACM to remain exposed, uncontained, and undisposed of at North Ridge Estates and for failing to properly strip ACM from insulation pipes when they became exposed. Ex. A.



**Perkins Coie LLP**
1211 S.W. Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2000
Fax: (503) 727-2222

40.

The Order required MBK to "take immediate action to fully contain all asbestos material at the demolition site." The Order also required MBK to record the presence and location of any asbestos waste sites "by an acknowledged document with the appropriate county official . . . . Such document must be recorded in the same manner as a deed to real property." Ex. A.

41.

In response to this Order, Bercot wrote a letter to EPA saying that MBK would properly dispose of the asbestos already on the ground at North Ridge Estates and would place deed restrictions in the disposal areas when the property was subdivided. A copy of this letter is attached hereto as Exhibit B. Bercot also assured EPA that MBK would "[s]ubmit to the DEQ aletter [*sic*] of intent to set aside disposal areas in deed restriction to insure no building or digging be done." Ex. B.

42.

Bercot assured EPA that MBK would remove the asbestos from standing buildings, bag that waste, and place it in basement areas to be approved by DEQ. Ex. B.

43.

Upon information and belief, sometime during or after September 1979, MBK demolished or contracted for the demolition of several buildings that were formerly part of the Barracks. Upon information and belief, those buildings contained ACM.

44.

Upon information and belief, MBK did not conduct this demolition in compliance with existing asbestos regulations or EPA's Compliance Order.

45.

Upon information and belief, MBK or its agent caused asbestos to be placed, released, or disposed of on the ground in North Ridge Estates.



**Perkins Coie LLP**
1211 S.W. Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2000
Fax: (503) 727-2222

46.

Upon information and belief, MBK or its agent buried or arranged for ACM and ACWM to be buried in various locations throughout North Ridge Estates (the "ACWM burial sites").

47.

MBK never recorded the presence and location of the waste sites "in the same manner as a deed to real property," as required by EPA's 1979 Compliance Order.

**Subdivision and Sale of Lots in North Ridge Estates**

48.

North Ridge Estates was first subdivided in 1990. Subsequent additions were added in 1994 and 2001.

49.

MBK advertised the sale of lots in North Ridge Estates through the newspaper, real estate magazines, and flyers.

50.

Lisa Stewart, who is Stewart's daughter-in-law, is a real estate agent in the Klamath Falls area. Lisa Stewart was listed as the selling agent for the lots in North Ridge Estates. She also represented some of the Homeowners as buyers of property in North Ridge Estates.

51.

In the summer of 1994, the Burnses purchased Lot 5 in Block 2 of North Ridge Estates (the "Burns Property") from MBK. Lisa Stewart was the listing agent for the Burns Property.

52.

Prior to and during the sale to the Burnses, neither MBK nor any of its partners, individually, nor their agents, nor Lisa Stewart disclosed to the Burnses the presence of asbestos on or beneath the Burnses Property or North Ridge Estates.



**Perkins Coie LLP**
1211 S.W. Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2000
Fax: (503) 727-2222

53.

Prior to their purchase, the Burnses walked the Burns Property with Stewart. While they were walking the property, Joann Burns saw building debris and asked Stewart what it was. Stewart replied that it was just shingles and siding from old buildings. Stewart never disclosed the presence of asbestos in the building debris.

54.

On or about April 22, 1993, the Cornachiones purchased Lot 6 in Block 2 of North Ridge Estates (the "Cornachione Property") from MBK.

55.

Prior to and during the sale to the Cornachiones, neither MBK nor any of its partners, individually, nor their agents, disclosed to the Cornachiones the presence of asbestos on or beneath the Cornachione Property or North Ridge Estates.

56.

Prior to their purchase, the Cornachiones walked the Cornachione Property with Stewart. Stewart suggested that the Cornachiones build their house in a particular location on their lot and that they avoid the back portion of the lot because of "fill material." Stewart never disclosed the presence of asbestos in the fill material or on or beneath the Cornachione Property during this walk-through.

57.

On or about September 15, 1995, the Devishes purchased Lot 3 in Block 2 of North Ridge Estates (the "Devish Property") from MBK.

58.

Prior to and during the sale to the Devishes, neither MBK nor any of its partners, individually, nor their agents, disclosed to the Devishes the presence of asbestos on or beneath the Devish Property or North Ridge Estates.



**Perkins Coie LLP**
1211 S.W. Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2000
Fax: (503) 727-2222

59.

Prior to the Devishes' purchase of the Devish property, Jeff Devish walked his lot with Stewart. Stewart did not disclose the presence of asbestos at any time during this walk-through.

60.

During 1996, the Devishes contracted with M.L. Stewart, Inc. to build a house on the Devish Property.

61.

At no time prior to or during the construction of the Devishes' house did M.L. Stewart, Inc., or any of its agents, disclose the presence of asbestos on or beneath the Devish Property or North Ridge Estates.

62.

On or about June 1, 1999, the Gibsons purchased Lot 4 in Block 2 of North Ridge Estates (the "Gibson Property") from MBK. Lisa Stewart was the listing agent for the Gibson Property.

63.

Prior to and during the sale to the Gibsons, neither MBK nor any of its partners, individually, nor their agents, nor Lisa Stewart disclosed to the Gibsons the presence of asbestos on or beneath the Gibson Property or North Ridge Estates.

64.

On or about April 27, 1997, the Homfeldts purchased Lot 10 in the Second Addition of North Ridge Estates (the "Homfeldt Property") from MBK. Lisa Stewart was the listing agent for the Homfeldt Property

65.

Prior to and during the sale to the Homfeldts, neither MBK nor any of its partners, individually, nor their agents, nor Lisa Stewart disclosed to the Homfeldts the presence of asbestos on or beneath the Homfeldt Property or North Ridge Estates.



**Perkins Coie LLP**
1211 S.W. Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2000
Fax: (503) 727-2222

66.

On or about May 2, 1997, the Lees purchased Lot 16 in the Second Addition of North Ridge Estates (the "Lee Property") from MBK.

67.

Prior to and during the sale to the Lees, neither MBK nor any of its partners, individually, nor their agents, disclosed to the Lees the presence of asbestos on or beneath the Lee Property or North Ridge Estates.

68.

During 1998, the Lees contracted with M.L. Stewart, Inc. to build a house on the Lee Property.

69.

At no time prior to or during the construction of the Lees' house did M.L. Stewart, Inc., or any of its agents, disclose the presence of asbestos on or beneath the Lee Property or North Ridge Estates.

70.

On or about May 30, 2001, the Minguses purchased Lot 1 in the Second Addition of North Ridge (the "Mingus Property"). Lisa Stewart was the listing agent for the Mingus Property. The Minguses purchased their property from Dale and Eileen Slate (the "Slates"). The Slates purchased the Mingus Property from MBK.

71.

Prior to and during the sale to the Slates, neither MBK nor any of its partners, individually, nor their agents, disclosed to the Slates the presence of asbestos on or beneath the Mingus Property or North Ridge Estates.



**Perkins Coie LLP**
1211 S.W. Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2000
Fax: (503) 727-2222

72.

Prior to and during the sale to the Minguses, neither MBK nor any of its partners, individually, nor their agents, nor Lisa Stewart disclosed to the Minguses the presence of asbestos on or beneath the Mingus Property or North Ridge Estates.

73.

On or about January 3, 1997, the Petersons purchased Lot 11 in the Second Addition of North Ridge Estates (the "Peterson Property") from MBK. Lisa Stewart was the listing agent for the Peterson Property.

74.

Prior to and during the sale to the Petersons, neither MBK nor any of its partners, individually, nor their agents, nor Lisa Stewart disclosed to the Petersons the presence of asbestos on or beneath the Peterson Property or North Ridge Estates.

75.

Prior to the Petersons' purchase of the Peterson Property, they walked the property with Stewart. Stewart did not disclose the presence of asbestos on or beneath the Peterson Property or North Ridge Estates at any time during this walk-through.

76.

On or about July 13, 2000, the Selims purchased Lot 13 and part of Lot 14 in the Second Addition of North Ridge Estates (the "Selim Property"). Lisa Stewart was the listing agent for the Selim Property. The Selims purchased the Selim Property from Neil and Jenny Walle. Lisa Stewart was the listing agent for the Selim Property.

77.

The Walles purchased Lot 13 from MBK on or about July 12, 1996, and the relevant portion of Lot 14 from Dennis Bailey and Gail Galloway on June 8, 2000.



**Perkins Coie LLP**
1211 S.W. Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2000
Fax: (503) 727-2222

78.

Prior to and during the sale to the Walles, neither MBK nor any of its partners, individually, nor their agents, disclosed to the Walles the presence of asbestos on or beneath the Selim Property or North Ridge Estates.

79.

During 1998, the Walles contracted with M.L. Stewart, Inc. to build a house on the Selim Property.

80.

At no time prior to or during the construction of the house on the Selim Property did M.L. Stewart, Inc., or its agents, disclose to the Walles the presence of asbestos on or beneath the Selim Property or North Ridge Estates.

81.

During construction of the house on the Selim Property, Stewart recommended to the Walles that the house be located in a particular position on the lot. Stewart stated that there was "garbage" buried on a portion of the Selim Property and that the burial site would be the perfect spot for the yard. Stewart never disclosed the presence of asbestos in the burial site or on or beneath the Selim Property.

82.

Prior to and during the sale to the Selims, neither MBK nor any of its partners, individually, nor their agents, nor Lisa Stewart disclosed to the Selims the presence of asbestos on or beneath the Selim Property or North Ridge Estates.

83.

Prior to the Selims' purchase of the Selim Property, David Selim walked the property with Stewart. Stewart did not disclose the presence of asbestos on or beneath the Selim Property or North Ridge Estates at any time during this walk-through.



**Perkins Coie LLP**
1211 S.W. Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2000
Fax: (503) 727-2222

84.

On or about January 23, 1992, the Stearnses purchased Lot 1 in Block 2 of North Ridge Estates (the "Stearns Property") from MBK. Lisa Stewart represented both the seller and the Stearnses during their purchase of the Stearns Property.

85.

Prior to and during the sale to the Stearnses, neither MBK nor any of its partners, individually, nor their agents, nor Lisa Stewart disclosed to the Stearnses the presence of asbestos on or beneath the Stearns Property or North Ridge Estates.

86.

Prior to the Stearnses' purchase of the Stearns Property, they walked the property with Stewart. Stewart did not disclose the presence of asbestos on or beneath the Stearns Property or North Ridge Estates at any time during this walk-through.

87.

On or about April 2, 1997, the Villas purchased Lot 17 in the Second Addition of North Ridge Estates (the "Villa Property") from MBK. Lisa Stewart represented both the seller and the Villas during their purchase of the Villa Property.

88.

Prior to and during the sale to the Villas, neither MBK nor any of its partners, individually, nor their agents, nor Lisa Stewart disclosed to the Villas the presence of asbestos on or beneath the Villa Property or North Ridge Estates.

89.

Prior to the Villas' purchase of the Villa Property, they walked the property with Stewart and Lisa Stewart. Stewart told the Villas that there was a mound at the front of their property with a "bunch of stuff in it" and that they "might not want to mess with it." Neither Stewart nor



**Perkins Coie LLP**
1211 S.W. Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2000
Fax: (503) 727-2222

Lisa Stewart disclosed the presence of asbestos on or beneath the Villa Property or North Ridge Estates at any time during this walk-through.

90.

On or about December 13, 1999, the Walles purchased Lot 12 in the Second Addition of North Ridge Estates (the "Walle Property") from MBK.

91.

Prior to and during the sale to the Walles, neither MBK nor any of its partners, individually, nor their agents, disclosed to the Walles the presence of asbestos on or beneath the Walle Property or North Ridge Estates.

92.

Prior to their purchase of the Walle Property, the Walles saw construction debris on the property. The Walles asked Stewart about the debris, and Stewart stated that it was "old building materials." Stewart did not disclose at any time that the debris contained asbestos.

93.

During 2001 and 2002, the Walles contracted with M.L. Stewart, Inc. to build a house on the Walle Property.

94.

At no time prior to or during the construction of the Walles' house did M.L. Stewart, Inc., or any of its agents, disclose the presence of asbestos on or beneath the Walle Property or North Ridge Estates.

95.

On or about September 15, 2000, the Winns purchased Lot 18 in the Second Addition of North Ridge (the "Winn Property"). The Winns purchased their property from Michael Hitz ("Hitz"). Upon information and belief, Hitz purchased the Winn Property from MBK.



**Perkins Coie LLP**
1211 S.W. Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2000
Fax: (503) 727-2222

96.

Prior to and during the sale to Hitz, neither MBK nor any of its partners, individually, nor their agents, disclosed to Hitz the presence of asbestos on or beneath the Winn Property or North Ridge Estates.

97.

Prior to and during the sale to the Winns, neither MBK nor any of its partners, individually, nor their agents, disclosed to the Winns the presence of asbestos on or beneath the Winn Property or North Ridge Estates.

98.

At the time each Homeowner purchased his or her property in North Ridge Estates, none of the Homeowners were aware of the presence of any asbestos on or beneath their property or any portion of North Ridge Estates.

**Homeowners' Discovery of Asbestos at North Ridge Estates**

99.

On or about July 27, 2001, an excavator was preparing Lot 3 in the Second Addition of North Ridge Estates for building. The excavator dug up a pipe that was wrapped with asbestos-containing insulation.

100.

On or about July 27, 2001, Tomahawk Abatement ("Tomahawk") contacted the Oregon Department of Environmental Quality ("DEQ") and requested emergency asbestos removal of 12 linear feet of asbestos-containing pipe insulation from Lot 3 of the Second Addition.

101.

In response to Tomahawk's request and to an anonymous complaint about accumulated asbestos in North Ridge, Frank Messina ("Messina") of DEQ visited North Ridge Estates on



**Perkins Coie LLP**
1211 S.W. Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2000
Fax: (503) 727-2222

July 31, 2001. Messina observed construction debris that he identified as broken CAB and 180 linear feet of pipe with asbestos-containing insulation on Lot 3 of the Second Addition.

102.

Messina also observed CAB scattered on the ground throughout North Ridge Estates.

103.

In early May 2002, Sid Pacheco ("Pacheco"), of Malot Environmental ("Malot"), toured North Ridge Estates and informed several of the Homeowners that he would be conducting a cleanup of asbestos material in the subdivision.

104.

In early May 2002, Mary Bunch called several of the Homeowners and informed them that Malot would be conducting a cleanup of asbestos material in the subdivision.

105.

This visit by Pacheco and/or call by Mary Bunch was the first notification to any of the Homeowners that there was asbestos on or beneath their properties.

106.

A survey done by Malot Engineering ("Malot") in May 2002 noted the presence of over 50 tons of ACWM scattered throughout North Ridge Estates.

107.

Malot's survey also identified at least twelve lots in North Ridge Estates that have asbestos-containing pipe or ACWM burial sites buried beneath them.

108.

Upon information and belief, there is ACM located on and/or beneath each of the Homeowners' properties in North Ridge Estates.





**Perkins Coie LLP**
1211 S.W. Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2000
Fax: (503) 727-2222

**FIRST CLAIM FOR RELIEF**
**(Recovery of Response Costs Under CERCLA – Against MBK, Stewart, Bercot, Tuttle, individually and as Trustee of the Tuttle Trust, and Mary Lou Stewart)**

109.

Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 108 herein.

110.

Section 107(a) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a) provides for a right of action by a private party to recover its response costs from any other person who is liable or potentially liable under CERCLA.

111.

There has been a release, as that term is defined in 42 U.S.C. § 9601(22), of asbestos, which is a hazardous substance under 42 U.S.C. § 9601(14), at North Ridge Estates.

112.

MBK, as owner of a facility, as that term is defined in 42 U.S.C. § 9601(9), caused or allowed to be caused the release of a hazardous substance at North Ridge Estates during its ownership of the property.

113.

Stewart, as owner of a facility, as that term is defined in 42 U.S.C. § 9601(9), caused or allowed to be caused the release of a hazardous substance at North Ridge Estates during his ownership of the property.

114.

Mary Lou Stewart, as owner of a facility, as that term is defined in 42 U.S.C. § 9601(9), caused or allowed to be caused the release of a hazardous substance at North Ridge Estates during her ownership of the property.



**Perkins Coie LLP**
1211 S.W. Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2000
Fax: (503) 727-2222

115.

Bercot, as owner of a facility, as that term is defined in 42 U.S.C. § 9601(9), caused or allowed to be caused the release of a hazardous substance at North Ridge Estates during his ownership of the property.

116.

Tuttle, as Trustee of the Tuttle Trust, was the owner of a facility, as that term is defined in 42 U.S.C. § 9601(9), and individually and as Trustee of the Tuttle Trust caused or allowed to be caused the release of a hazardous substance at North Ridge Estates during his ownership of the property.

117.

MBK, Stewart, Mary Lou Stewart, Bercot, and Tuttle, individually and as Trustee of the Tuttle Trust, are liable parties under CERCLA, pursuant to 42 U.S.C. § 9607.

118.

As a result of the release described in Paragraph 111 herein, the Homeowners, individually, have incurred necessary response costs in undertaking investigative, response, or remedial actions to address the resulting soil and air contamination.

119.

The investigative, response, or remedial actions undertaken and to be undertaken by the Homeowners and the response costs incurred or to be incurred are or will be consistent with the National Contingency Plan.

120.

As liable parties under CERCLA, MBK, Stewart, Mary Lou Stewart, Tuttle, individually and as Trustee of the Tuttle Trust, and Bercot are jointly and severally liable to the Homeowners for the investigative, response, or remedial action costs incurred and to be incurred in response to any or all of the releases of hazardous substances described in Paragraph 111 herein, plus interest



**Perkins Coie LLP**
1211 S.W. Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2000
Fax: (503) 727-2222

thereon, at the maximum rate allowed by law, from the date the Homeowners expended such funds.

**SECOND CLAIM FOR RELIEF**
**(Contribution Under CERCLA – Against MBK, Stewart, Bercot, Tuttle, individually and as Trustee of the Tuttle Trust, and Mary Lou Stewart)**

121.

Plaintiffs reallege and incorporate by reference all allegations contained in Paragraphs 1 through 120 herein.

122.

Sections 107(a) and 113(f) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9607(a) and 9613(f), provide for a right of action by a private party for contribution from any other person who is liable or potentially liable under CERCLA.

123.

In paying more than their fair, equitable, or proportional share of the costs of response to the release of hazardous substances at North Ridge Estates, the Homeowners have discharged and may in the future discharge a common liability of the Homeowners and MBK.

124.

MBK is liable to the Homeowners, pursuant to 42 U.S.C. § 9613, for the investigative, response, or remedial action costs incurred and to be incurred in response to any or all of the releases of hazardous substances described in Paragraph 111 herein, plus interest thereon, at the maximum rate allowed by law, from the date the Homeowners expended such funds.

125.

In paying more than their fair, equitable, or proportional share of the costs of response to the release of hazardous substances at the North Ridge Property, the Homeowners have discharged and may in the future discharge a common liability of the Homeowners and Stewart.



**Perkins Coie LLP**
1211 S.W. Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2000
Fax: (503) 727-2222

126.

Stewart is liable to the Homeowners, pursuant to 42 U.S.C. § 9613, for the investigative, response, or remedial action costs incurred and to be incurred in response to any or all of the releases of hazardous substances described in Paragraph 111 herein, plus interest thereon, at the maximum rate allowed by law, from the date the Homeowners expended such funds.

127.

In paying more than their fair, equitable, or proportional share of the costs of response to the release of hazardous substances at the North Ridge Property, the Homeowners have discharged and may in the future discharge a common liability of the Homeowners and Mary Lou Stewart.

128.

Mary Lou Stewart is liable to the Homeowners, pursuant to 42 U.S.C. § 9613, for the investigative, response, or remedial action costs incurred and to be incurred in response to any or all of the releases of hazardous substances described in Paragraph 111 herein, plus interest thereon, at the maximum rate allowed by law, from the date the Homeowners expended such funds.

129.

In paying more than their fair, equitable, or proportional share of the costs of response to the release of hazardous substances at the North Ridge Property, the Homeowners have discharged and may in the future discharge a common liability of the Homeowners and Bercot.

130.

Bercot is liable to the Homeowners, pursuant to 42 U.S.C. § 9613, for the investigative, response, or remedial action costs incurred and to be incurred in response to any or all of the releases of hazardous substances described in Paragraph 111 herein, plus interest thereon, at the maximum rate allowed by law, from the date the Homeowners expended such funds.



**Perkins Coie LLP**
1211 S.W. Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2000
Fax: (503) 727-2222

131.

In paying more than their fair, equitable, or proportional share of the costs of response to the release of hazardous substances at the North Ridge Property, the Homeowners have discharged and may in the future discharge a common liability of the Homeowners and Tuttle, individually and as Trustee of the Tuttle Trust.

132.

Tuttle, individually and as Trustee of the Tuttle Trust, is liable to the Homeowners, pursuant to 42 U.S.C. § 9613, for the investigative, response, or remedial action costs incurred and to be incurred in response to any or all of the releases of hazardous substances described in Paragraph 111 herein, plus interest thereon, at the maximum rate allowed by law, from the date the Homeowners expended such funds.

**THIRD CLAIM FOR RELIEF**
**(Cost Recovery Under Oregon Law, ORS 465.200 *et seq.* – Against MBK, Stewart, Mary Lou Stewart, Bercot, and Tuttle, individually and as Trustee for the Tuttle Trust)**

133.

Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 132 herein.

134.

ORS 465.255 provides for a right of action by a private party to recover remedial action costs.

135.

There has been a release, as that term is defined in ORS 465.200(21), of asbestos, which is a hazardous substance, at North Ridge Estates.



**Perkins Coie LLP**
1211 S.W. Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2000
Fax: (503) 727-2222

136.

MBK, as owner of a facility, as that term is defined in ORS 465.200(12), caused or allowed to be caused the release of a hazardous substance at North Ridge Estates during its ownership of the property.

137.

Stewart, as owner of a facility, as that term is defined in ORS 465.200(12), caused or allowed to be caused the release of a hazardous substance at North Ridge Estates during his ownership of the property.

138.

Mary Lou Stewart, as owner of a facility, as that term is defined in ORS 465.200(12), caused or allowed to be caused the release of a hazardous substance at North Ridge Estates during her ownership of the property.

139.

Bercot, as owner of a facility, as that term is defined in ORS 465.200(12), caused or allowed to be caused the release of a hazardous substance at North Ridge Estates during his ownership of the property.

140.

Tuttle, as Trustee of the Tuttle Trust, was the owner of a facility, as that term is defined in ORS 465.200(12), and individually and as Trustee of the Tuttle Trust caused or allowed to be caused the release of a hazardous substance at North Ridge Estates during his ownership of the property.

141.

As a result of the release described in Paragraph 135 herein, the Homeowners have incurred and will continue to incur necessary remedial action costs, as that term is used in ORS 465.200(23), at and around North Ridge Estates.



**Perkins Coie LLP**
1211 S.W. Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2000
Fax: (503) 727-2222

142.

The remedial actions include, but are not limited to, all work to be performed at and around North Ridge Estates pursuant to DEQ's direction, and other work undertaken at and around North Ridge Estates. The remedial actions to be taken by the Homeowners have been or will be pursuant to federal or state authorization.

143.

The Homeowners have satisfied any and all conditions precedent under Oregon law or otherwise to the undertaking of remedial action and the incurring of remedial action costs at and around North Ridge Estates and to the recovery of such costs from liable parties under ORS 465.255 *et seq.*

144.

MBK, Stewart, Mary Lou Stewart, Bercot, and Tuttle, individually and as Trustee of the Tuttle Trust, are liable to the Homeowners, pursuant to ORS 465.255 *et seq.*, for the remedial action costs incurred and to be incurred in response to the releases of hazardous substances described in Paragraph 135 herein, plus interest thereon, at the maximum rate allowed by law, from the date the Homeowners expended such funds.

**FOURTH CLAIM FOR RELIEF**
**(Contribution Under ORS 465.257 – Against MBK, Stewart, Mary Lou Stewart, Bercot, and Tuttle, individually and as Trustee of the Tuttle Trust)**

145.

The Homeowners reallege and incorporate by reference the allegations contained in Paragraphs 1 through 144 herein.

146.

ORS 465.257 provides for a right of contribution against any person who is liable or potentially liable under ORS 465.255.



**Perkins Coie LLP**
1211 S.W. Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2000
Fax: (503) 727-2222

147.

Pursuant to ORS 465.257, MBK, Stewart, Mary Lou Stewart, Bercot, and Tuttle, individually and as Trustee for the Tuttle Trust, are liable to the Homeowners for contribution for the remedial action costs incurred and to be incurred in response to the releases of hazardous substances described in Paragraph 135 herein, plus interest thereon, at the maximum rate allowed by law, from the date the Homeowners expended such funds.

**FIFTH CLAIM FOR RELIEF**
**(Declaratory Relief)**

148.

The Homeowners reallege and incorporate by reference the allegations contained in Paragraphs 1 through 147 herein.

149.

An actual controversy exists between the Homeowners and MBK and its partners relating to MBK's responsibility for remedial action costs to be incurred in the future in response to the release of hazardous substance at North Ridge.

150.

Pursuant to 28 U.S.C. §§ 2201-2202, the Homeowners are entitled to a declaration that MBK and its partners are strictly liable under CERCLA, 42 U.S.C. § 9607, and the Oregon Superfund Statute, ORS 465.255 *et seq.*, for all future remedial action costs incurred by the Homeowners, from the date of this Complaint forward, that are attributable to or associated with the contamination at or from North Ridge Estates.



**Perkins Coie LLP**
1211 S.W. Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2000
Fax: (503) 727-2222

**SIXTH CLAIM FOR RELIEF**
**(RICO – Against Stewart, Bercot, Tuttle, individually and as Trustee for the Tuttle Trust, Mary Lou Stewart, and Lisa Stewart)**

151.

Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 150 herein.

152.

The Homeowners have suffered a violation of their rights under Title IX of the Organized Crime Control Act of 1970, as amended, 18 U.S.C. § 1961 *et seq.*

153.

MBK is an "enterprise" within the meaning of 18 U.S.C. § 1961(4).

154.

MBK has, at times relevant to this lawsuit, been engaged in activities that substantially affect interstate commerce.

155.

Stewart, Bercot, Tuttle, individually and as Trustee for the Tuttle Trust, Mary Lou Stewart, Lisa Stewart, and the Homeowners, are "persons" within the meaning of 18 U.S.C. § 1961(3).

156.

Stewart, Bercot, Tuttle, individually and as Trustee for the Tuttle Trust, Mary Lou Stewart, and Lisa Stewart are employed by or associated with MBK and with other enterprises within the meaning of 18 U.S.C. § 1962.

157.

Stewart, Bercot, Tuttle, individually and as Trustee for the Tuttle Trust, Mary Lou Stewart, and Lisa Stewart have conducted or participated, directly or indirectly, in the conduct of the affairs of MBK through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).



**Perkins Coie LLP**
1211 S.W. Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2000
Fax: (503) 727-2222

158.

The predicate acts that constitute this pattern of racketeering activity, as defined in 18 U.S.C. § 1961(1) & (5), include:

(a) Conduct and actions by Stewart, Bercot, Tuttle, individually and as Trustee for the Tuttle Trust, Mary Lou Stewart, and Lisa Stewart constituting a scheme or artifice for the purpose of defrauding the Homeowners and others and obtaining money from the Homeowners and others, which was furthered by use of the United States mails in violation of 18 U.S.C. § 1341, and

(b) Conduct and actions by Stewart, Bercot, Tuttle, individually and as Trustee for the Tuttle Trust, Mary Lou Stewart, and Lisa Stewart constituting a scheme or artifice for the purpose of defrauding the Homeowners and others and obtaining money from the Homeowners and others, which was furthered by use of interstate telephone wires in violation of 18 U.S.C. § 1343.

159.

The multiple acts of racketeering constituting this pattern of racketeering activity were ongoing, continuous, and interrelated to each other, and occurred over a number of years. The predicate acts occurred within ten years of one another.

160.

Stewart, Bercot, Tuttle, individually and as Trustee of the Tuttle Trust, Mary Lou Stewart, and Lisa Stewart had knowledge that there was asbestos located on and beneath North Ridge Estates.

161.

Stewart, Bercot, Tuttle, individually and as Trustee of the Tuttle Trust, Mary Lou Stewart, and Lisa Stewart did not disclose the presence of asbestos in North Ridge Estates to the Homeowners.



**Perkins Coie LLP**
1211 S.W. Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2000
Fax: (503) 727-2222

162.

Rather, Stewart, Bercot, Tuttle, individually and as Trustee of the Tuttle Trust, Mary Lou Stewart, and Lisa Stewart employed a scheme or artifice to defraud with respect to the North Ridge Estates property. Elements of this scheme or artifice to defraud included but are not limited to:

(a) informing EPA that MBK would properly dispose of the asbestos scattered throughout North Ridge Estates and remaining on standing buildings;

(b) informing EPA that, prior to subdividing North Ridge Estates, MBK would set aside disposal areas in deed restrictions and prevent construction or digging in those locations;

(c) informing EPA that MBK would place parks on the ACWM burial sites;

(d) causing asbestos to be scattered throughout North Ridge Estates.

(e) burying asbestos in various locations throughout North Ridge Estates;

(f) failing to record deed restrictions as required by the EPA's Compliance Order;

(g) marketing North Ridge Estates as suitable for residential development;

(h) representing to the Homeowners and others that North Ridge Estates was suitable for residential development with full knowledge that asbestos was scattered on the ground throughout North Ridge Estates and that a system of asbestos-containing pipes and ACWM burial sites was located beneath the surface throughout North Ridge Estates;

(i) fraudulently misrepresenting and omitting material facts about North Ridge Estates; and

(j) fraudulently enticing the Homeowners and others to purchase property in North Ridge Estates.

163.

Through this scheme or artifice to defraud, Stewart, Tuttle, individually and as Trustee of the Tuttle Trust, Bercot, Mary Lou Stewart, and Lisa Stewart engaged in a series of property



**Perkins Coie LLP**
1211 S.W. Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2000
Fax: (503) 727-2222

transactions with the Homeowners and others in which they deprived the Homeowners and others of money and property.

164.

In conducting this scheme or artifice to defraud, Stewart, Bercot, Tuttle, individually and as Trustee of the Tuttle Trust, Mary Lou Stewart, and Lisa Stewart had the specific purpose of obtaining money or property from the Homeowners and others by false or fraudulent pretenses.

165.

This scheme or artifice to defraud was accomplished, in whole or in part, through Stewart, Tuttle, individually and as Trustee of the Tuttle Trust, Bercot, Mary Lou Stewart, and Lisa Stewart's use of interstate telephone wires and/or the United States mails.

166.

The Homeowners were injured in their business or property by reason of Stewart, Bercot, Tuttle, individually and as Trustee of the Tuttle Trust, Mary Lou Stewart, and Lisa Stewart's violation or violations of 18 U.S.C. § 1962, in that, as a direct and proximate result of the defendants' complained of acts, the Homeowners purchased contaminated property without knowledge that it was contaminated and have suffered damages including but not limited to contamination of their property with asbestos, diminution in their property values as a result of the asbestos contamination, and inability to sell and/or refinance their properties.

167.

By reason of Stewart, Bercot, Tuttle, individually and as Trustee of the Tuttle Trust, Mary Lou Stewart, and Lisa Stewart 's violations of 18 U.S.C. § 1962, the Homeowners have been damaged in the amount of at least $3,735,504, but in an exact amount to be proved at trial. The Homeowners are entitled, pursuant to 18 U.S.C. § 1964(c), to threefold the amount of damages, in an exact amount to be determined at trial and with interest thereon, and reasonable attorney fees in conjunction therewith.



**Perkins Coie LLP**
1211 S.W. Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2000
Fax: (503) 727-2222

**SEVENTH CLAIM FOR RELIEF**
**(Unfair Trade Practices, ORS 646.605 *et seq.* – Against MBK, Stewart, Mary Lou Stewart, and Tuttle, individually and as Trustee of the Tuttle Trust)**

168.

Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 167 herein.

169.

ORS 646.638(1) provides for a private right of action for a person who suffers ascertainable loss of money or property as a result of another's willful use of an unlawful trade practice under ORS 646.608.

170.

MBK, Stewart, Mary Lou Stewart, and Tuttle, individually and as Trustee of the Tuttle Trust, were aware of the presence of asbestos on and beneath North Ridge Estates when they conveyed the property to the Homeowners.

171.

MBK, Stewart, Mary Lou Stewart, and Tuttle, individually and as Trustee of the Tuttle Trust, each failed to disclose to the Homeowners the presence of asbestos on and beneath North Ridge Estates prior to or concurrent with the sale of the Homeowners' property.

172.

The presence of asbestos on or beneath North Ridge Estates was a known, material defect.

173.

As a result of MBK, Stewart, Tuttle, individually and as Trustee of the Tuttle Trust, and Mary Lou Stewart's failure to disclose to the Homeowners the presence of asbestos on and beneath North Ridge Estates prior to or concurrent with the sale of the North Ridge Estates lots,



**Perkins Coie LLP**
1211 S.W. Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2000
Fax: (503) 727-2222

the Homeowners have suffered damages including diminution in their property values, inability to sell or refinance their property, and costs to investigate and remediate their property.

174.

As a direct cause of MBK, Stewart, Tuttle, individually and as Trustee of the Tuttle Trust, and Mary Lou Stewart's failure to disclose the presence of asbestos on and beneath North Ridge Estates, the Homeowners have been damaged in an amount not less than $3,735,504, but in an exact amount to be proved at trial.

175.

By failing to disclose the presence of asbestos contamination on and beneath North Ridge Estates, MBK, Stewart, Mary Lou Stewart, and Tuttle, individually and as Trustee of the Tuttle Trust, acted with malice or showed a reckless and outrageous indifference to the health, safety, and welfare of others.

176.

The Homeowners are therefore entitled to punitive damages under ORS 18.537(1) and 646.638 in an amount to be determined at trial.

**EIGHTH CLAIM FOR RELIEF**
**(Common Law Fraud – against MBK, Stewart, Mary Lou Stewart, Bercot, Tuttle, individually and as Trustee for the Tuttle Trust, and Lisa Stewart)**

177.

Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 176 herein.

178.

MBK, Stewart, Mary Lou Stewart, Bercot, Tuttle, individually and as Trustee for the Tuttle Trust, and Lisa Stewart were each fully aware of the presence of asbestos on and beneath North Ridge Estates. MBK, Stewart, Mary Lou Stewart, Bercot, Tuttle, individually and as Trustee for the Tuttle Trust, and Lisa Stewart were each also fully aware of the system of



**Perkins Coie LLP**
1211 S.W. Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2000
Fax: (503) 727-2222

asbestos-containing pipes running beneath North Ridge Estates and of the ACWM burial sites beneath some of the Homeowners' properties.

179.

MBK, Stewart, Mary Lou Stewart, Bercot, Tuttle, individually and as Trustee for the Tuttle Trust, and Lisa Stewart's conduct in listing for sale and selling lots in North Ridge Estates to the Homeowners included a course of conduct to conceal from the Homeowners the fact that there was asbestos on the surface of North Ridge Estates and a system of asbestos-containing pipes and ACWM burial sites located beneath the property.

180.

MBK, Stewart, Mary Lou Stewart, Bercot, Tuttle, individually and as Trustee for the Tuttle Trust, and Lisa Stewart actively concealed the presence of asbestos on the ground at North Ridge Estates and the presence of the pipes and ACWM burial sites beneath North Ridge Estates from the Homeowners by:

(a) informing EPA that MBK would properly dispose of the asbestos scattered on the ground throughout North Ridge Estates and remaining on standing buildings;

(b) informing EPA that MBK would set aside disposal areas in deed restriction prior to subdividing the Property;

(c) informing EPA that MBK would place parks on the ACWM burial sites;

(d) improperly demolishing buildings with ACM on North Ridge Estates, thereby causing ACM and ACWM to be scattered on the ground throughout North Ridge Estates;

(e) burying asbestos in various locations throughout North Ridge Estates;

(f) failing to record deed restrictions as required by the EPA's Compliance Order;

(g) marketing North Ridge Estates as suitable for residential development; and

(h) representing some of the Homeowners in their purchase of property in North Ridge Estates;



**Perkins Coie LLP**
1211 S.W. Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2000
Fax: (503) 727-2222

(i) representing to the Homeowners that North Ridge Estates was suitable for residential development with full knowledge that asbestos was scattered throughout North Ridge Estates on the surface, that a system of asbestos-containing pipes was located beneath the surface throughout North Ridge Estates, and that ACWM burial sites were located beneath some of the lots in North Ridge Estates.

(j) fraudulently misrepresenting and omitting material facts about North Ridge Estates; and

(k) fraudulently enticing the Homeowners and others to purchase property in North Ridge Estates.

181.

MBK, Stewart, Mary Lou Stewart, Bercot, Tuttle, individually and as Trustee for the Tuttle Trust, and Lisa Stewart's active concealment and misrepresentations constituted material, false representations to the Homeowners.

182.

MBK, Stewart, Mary Lou Stewart, Bercot, Tuttle, individually and as Trustee for the Tuttle Trust, and Lisa Stewart each had full knowledge of the falsity of the representations or ignorance of their truth.

183.

MBK, Stewart, Mary Lou Stewart, Bercot, Tuttle, individually and as Trustee for the Tuttle Trust, and Lisa Stewart each intended that the Homeowners would rely on their false representations by purchasing property in North Ridge Estates.

184.

The Homeowners reasonably relied on MBK, Stewart, Mary Lou Stewart, Bercot, Tuttle, individually and as Trustee for the Tuttle Trust, and Lisa Stewart's false representations by



**Perkins Coie LLP**
1211 S.W. Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2000
Fax: (503) 727-2222

purchasing property in North Ridge Estates and by building houses and other improvements on that property.

185.

The Homeowners were unaware of the asbestos contamination on and beneath their properties until early May 2002.

186.

As a result of MBK, Stewart, Mary Lou Stewart, Bercot, Tuttle, individually and as Trustee for the Tuttle Trust, and Lisa Stewart's fraudulent misrepresentations, the Homeowners have been damaged in the amount of at least $3,735,504, but in an exact amount to be proved at trial.

187.

By concealing the presence of asbestos contamination on and beneath North Ridge Estates, MBK, Stewart, Mary Lou Stewart, Bercot, Tuttle, individually and as Trustee for the Tuttle Trust, and Lisa Stewart acted with malice or showed a reckless and outrageous indifference to the health, safety, and welfare of others.

188.

The Homeowners are therefore entitled to punitive damages under ORS 18.537(1) in an amount to be determined at trial.

**NINTH CLAIM FOR RELIEF**
**(Common Law Fraud – Against M.L. Stewart, Inc.)**

189.

Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 188 herein.



**Perkins Coie LLP**
1211 S.W. Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2000
Fax: (503) 727-2222

190.

Prior to and during the construction of the Walles', Lees', and Devishes' houses in North Ridge Estates, M.L. Stewart, Inc., or its agents, was aware of the presence of asbestos on the ground on and asbestos-containing pipes and ACWM burial sites beneath the Walle Property, the Lee Property, the Devish Property, and North Ridge Estates.

191.

M.L. Stewart, Inc.'s conduct while constructing the Walles', Lees', and Devishes' houses consisted of a course of conduct to conceal from the Walles, Lees, and Devishes the fact that there was asbestos on the ground on, and a system of asbestos-containing pipes and ACWM burial sites located beneath, the Walle Property, the Devish Property, the Lee Property, and North Ridge Estates.

192.

M.L. Stewart, Inc., actively concealed from the Walles, Lees, and Devishes the presence of asbestos on and beneath the Walle Property, the Lee Property, the Devish Property, and North Ridge Estates by:

(a) representing to the Walles, Lees, and Devishes that North Ridge Estates was suitable for residential development;

(b) failing to disclose the presence of such contamination, ACWM burial sites, or pipes during the construction of the Devishes', Lees', and Walles' houses;

(c) representing that material buried beneath the Selim Property was "garbage" with full knowledge that ACM was included in the buried material; and

(d) representing that the yard on the Selim Property should be located on top of the "garbage burial" site;



**Perkins Coie LLP**
1211 S.W. Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2000
Fax: (503) 727-2222

193.

M.L. Stewart, Inc.'s active concealment and misrepresentations to the Walles, Lees, and Devishes constituted material, false representations.

194.

M.L. Stewart, Inc., had full knowledge of the falsity of the representations or ignorance of their truth.

195.

M.L. Stewart, Inc., intended that the Walles, Lees, and Devishes would rely on its false representations by contracting with M.L. Stewart, Inc. to construct houses in North Ridge Estates.

196.

The Walles, Lees, and Devishes reasonably relied on M.L. Stewart, Inc.'s false representations by contracting with M.L. Stewart, Inc., for the construction of houses in North Ridge Estates.

197.

The Walles, Lees, and Devishes were unaware of the asbestos contamination until they spoke to Pacheco and/or Mary Bunch in early May 2002 about the cleanup of asbestos in North Ridge Estates

198.

As a result of M.L. Stewart, Inc.'s fraudulent misrepresentations, the Walles, Lees, and Devishes have been damaged in the amount of at least $1,103,778, but in an exact amount to be proved at trial.



**Perkins Coie LLP**
1211 S.W. Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2000
Fax: (503) 727-2222

199.

By concealing the presence of asbestos contamination on and beneath North Ridge Estates, M.L. Stewart, Inc., acted with malice or showed a reckless and outrageous indifference to the health, safety, and welfare of others.

200.

The Walles, Lees, and Devishes are therefore entitled to punitive damages under ORS 18.537(1) in an amount to be determined at trial.

**TENTH CLAIM FOR RELIEF**
**(Negligence – against MBK, Stewart, Bercot, and Tuttle, individually and as Trustee of the Tuttle Trust)**

201.

Plaintiffs reallege and reincorporate by reference the allegations contained in Paragraphs 1 through 200 herein.

202.

Upon information and belief, MBK and its partners demolished or contracted for the demolition of buildings on North Ridge Estates that contained ACM.

203.

Upon information and belief, MBK and its partners did not conduct this demolition in compliance with asbestos regulations in place at the time of the demolition or with EPA's 1979 Compliance Order.

204.

During the course of the demolition conducted or directed by MBK, asbestos was scattered on the surface of North Ridge Estates and was released into the environment at or near North Ridge Estates.



**Perkins Coie LLP**
1211 S.W. Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2000
Fax: (503) 727-2222

205.

MBK and its partners also buried or contracted for the burial of ACM and ACWM beneath North Ridge Estates.

206.

MBK and its partners failed to record the location of this buried material in deed restrictions, as required by EPA's 1979 Compliance Order.

207.

The risk that asbestos contamination would occur from the improperly conducted demolition was foreseeable and was a risk to the Homeowners' legally protected property interests.

208.

MBK and its partners' failure to comply with existing regulations and EPA's Compliance Order, and their failure to ensure that asbestos did not escape into the environment, was unreasonable.

209.

MBK and its partners' failure to comply with existing regulations and EPA's Compliance Order and their failure to ensure that asbestos did not escape into the environment was negligence per se.

210.

The Homeowners are within the class of persons intended to be protected by the asbestos regulations and by EPA's Compliance Order.

211.

The Homeowners have been injured as a result of MBK and its partners' failure to comply with the regulations and with EPA's Compliance Order. The Homeowners' property is contaminated with asbestos, and the Homeowners have been exposed to asbestos as a result of



**Perkins Coie LLP**
1211 S.W. Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2000
Fax: (503) 727-2222

that contamination. The Homeowners have also suffered diminution in their property values as a result of the contamination and an inability to sell and/or refinance their properties and have incurred costs to investigate the contamination.

212.

As a direct and proximate result of MBK and its partners' failure to comply with regulations and to conduct the demolition in a reasonable and safe manner to ensure that asbestos would not escape into the environment, the Homeowners have suffered damages in the amount of at least $3,735,504, with the exact amount to be determined at trial, plus interest.

WHEREFORE, Plaintiffs pray for relief as follows:

1. On their First Claim for Relief, for judgment against Defendants MBK, Stewart, Mary Lou Stewart, Bercot, and Tuttle, individually and as Trustee for the Tuttle Trust, and damages in an amount to be proved at trial;

2. On their Second Claim for Relief, for judgment against Defendants MBK, Stewart, Mary Lou Stewart, Bercot, and Tuttle, individually and as Trustee for the Tuttle Trust, and damages in an amount to be proved at trial;

3. On their Third Claim for Relief, for judgment against Defendants MBK, Stewart, Mary Lou Stewart, Bercot, and Tuttle, individually and as Trustee for the Tuttle Trust, and damages in an amount to be proved at trial;

4. On their Fourth Claim for Relief, for judgment against Defendants MBK, Stewart, Mary Lou Stewart, Bercot, and Tuttle, individually and as Trustee for the Tuttle Trust, and damages in an amount to be proved at trial;

5. On their Fifth Claim for Relief, for a declaration that Defendants MBK, Stewart, Mary Lou Stewart, Bercot, and Tuttle, individually and as Trustee for the Tuttle Trust, are strictly liable for all future remedial action and response costs incurred by the Homeowners;

6. On their Sixth Claim for Relief, for judgment against Defendants Stewart, Mary Lou Stewart, Bercot, Tuttle, individually and as Trustee of the Tuttle Trust, and Lisa Stewart and



**Perkins Coie LLP**
1211 S.W. Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2000
Fax: (503) 727-2222

damages to Plaintiffs for threefold an amount determined to have been sustained by each of them, respectively, as a result of violation of their rights under Title IX of the Organized Crime Control Act of 1970, as amended, 18 U.S.C. § 1961 *et seq.*, but not less than $11,206,512, together with attorney fees and costs;

7. On their Seventh Claim for Relief, for judgment against Defendants MBK, Stewart, Mary Lou Stewart, and Tuttle, individually and as Trustee for the Tuttle Trust, and damages in the amount of at least $3,735,504, but in an exact amount to be proved at trial, together with attorney fees and costs;

8. On their Eighth Claim for Relief, for judgment against Defendants MBK, Stewart, Mary Lou Stewart, Tuttle, individually and as Trustee for the Tuttle Trust, and Lisa Stewart and damages in the amount of at least $3,735,504, but in an exact amount to be proved at trial;

9. On their Ninth Claim for Relief, for judgment against Defendant M.L. Stewart, Inc., and damages in the amount of at least $1,103,778, but in an exact amount to be proved at trial;

10. On their Tenth Claim for Relief, for judgment against Defendants MBK, Stewart, Bercot, and Tuttle, individually and as Trustee of the Tuttle Trust, and damages in the amount of at least $3,735,504, but in an exact amount to be proved at trial;

11. On their Seventh, Eighth, and Ninth Claims for Relief, for punitive damages in an amount to be determined at trial;

12. For prejudgment and postjudgment interest on all damages awarded at the maximum rate allowed by law;

13. For their costs, disbursements, and attorneys' fees incurred herein; and



**Perkins Coie LLP**
1211 S.W. Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2000
Fax: (503) 727-2222

14. For such other and further relief as the Court deems just and proper.

Plaintiffs hereby demand trial by jury.

DATED: March 17, 2003.

**PERKINS COIE LLP**

By ______________________________

Tom Lindley, OSB No. 85060
Austin W. Crowe, OSB No. 65028
Peggy L. Crane, OSB No. 01238
Telephone: (503) 727-2000

Attorneys for Plaintiffs



**Perkins Coie LLP**
1211 S.W. Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2000
Fax: (503) 727-2222

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
REGION 10
1200 Sixth Avenue
Seattle, Washington 98101

IN THE MATTER OF:
M.B.K. COMPANY

Clean Air Act Proceeding
§113(a)(3) [42 USC §7413 (a)(3)]

No.X79-08-14-113

COMPLIANCE ORDER RE HAZARDOUS AIR POLLUTANTS

Pursuant to Section 113(a)(3) of the Clean Air Act [42 USC §7413(a)(3)] the Regional Administrator upon the basis of available information finds as follows:

FINDINGS OF FACT

1. The M.B.K. Company (herein referred to as the Company) conducted and operated certain building or facility demolition operations three miles north of Klamath Falls, Oregon, on old Fort Road, immediately prior to August 28, 1979. Those operations constitute "demolition" as defined in 40 CFR §61.21(j).

2. The Company is operating a demolition site which contains rubble from a previous demolition operation conducted by an unknown operator. This also contains asbestos materials which are exposed to the outside air. Although the Company did not generate this asbestos containing material, the material is located on the

Company-owned demolition site and is considered waste generated by this site. Therefore, the Company is required to dispose of the material in accordance with 40 CFR §61.25.

3. The said demolition operations caused and/or involved the generation and/or handling of quantities of hazardous air pollutant material consisting of asbestos containing materials within the meaning of 40 CFR §61.21(w).

4. National Emission Standards for Hazardous Air Pollutants (NESHAPS) requires that all demolition operations be reported to the appropriate authorities. EPA has delegated the responsibility for receiving all notifications of demolition pursuant to 40 CFR §61.22(d)(2) to Oregon State Department of Environmental Quality (DEQ). Since the Company notified DEQ of its intent to conduct demolition operations, the reporting requirement has been met.

5. In conducting those demolition operations, the Company failed to properly strip asbestos containing materials from the insulation pipes when the pipes became exposed as required by 40 CFR §61.22(d)(4)(i).

6. The Company has caused or permitted quantities of asbestos containing waste material to remain exposed, uncontained and undisposed of at the demolition site. Portions of these materials, specifically the rubble remaining from the previous demolition, are exposed to the outside air in an uncontained condition, and other portions are on the demolition site, bagged. The Company has failed to deposit all the foregoing asbestos containing materials at waste disposal sites as required by [40 CFR §61.22(j)(2)].

7. The Company has, therefore, violated 40 CFR §§61.22(d)(4)(i), and 61.22(j)(2), and Section 112(c) of the Clean Air Act [42 USC §7412(c)].

Based on the foregoing findings, it is hereby ORDERED as follows:

ORDER

1. The Company shall upon receipt of this Order take immediate action to contain fully all asbestos material at the demolition site, and thereafter shall, at all times, comply fully with 40 CFR §61.22 in connection with the handling, transportation, storage and disposal of such materials.

2. The Company shall refrain from any burning at the demolition site.

3. The Company is required to submit to EPA within two weeks of receipt of this order a plan for final disposal of asbestos containing material. The plan should address the asbestos containing material from the present demolition operation and all material remaining from previous demolition. The plan should include the following:

(A) An estimate of the amount of asbestos containing material which is to be disposed. This includes asbestos from previous, present, and proposed demolition operations.

(B) A detailed description of procedures to be used to collect and transfer material from demolition operations to disposal area, including wetting procedures



GPO-890-087

and other techniques for reducing dust during transfer.

(C) A detailed description and location of a proposed disposal site which is adequate in size to handle the the volume of asbestos containing material. This site should conform with the standards for waste disposal sites set forth in 40 CFR §61.25 (enclosed).

(E) A description detailing how the waste disposal site will be maintained to prevent exposure of asbestos containing materials. The appropriate procedures for dealing with an inactive waste site, contained in 40 CFR §61.22(l) (enclosed), should be followed.

4. In addition to needing EPA approval of the plan submitted per item 3, the Company is required to obtain all necessary permits from state and local authorities for disposal of the waste material. EPA approval of any disposal plan is contingent on the Company receiving these permits. The Company should begin applying for these permits upon receipt of this Order to ensure disposal will occur expeditiously once a plan has been approved by EPA.

5. The Company shall notify the proper Federal, State, and local authorities, as appropriate, before final disposal is commenced. The presence and location of the inactive waste site must be recorded by an acknowledged document with the appropriate county official and evidence of such submitted to EPA. Such document must be recorded in the same manner as a deed to real property.

6. All required submittals to EPA shall be addressed to:

U. S. Environmental Protection Agency
ATTN: Mark H. Hooper, Mail Stop 513
1200 Sixth Avenue
Seattle, Washington 98101

7. The Company shall immediately post warning signs at the demolition sites which will adequately caution any persons in or about the site that asbestos containing materials are present, and can create human health risks. The Company shall not be relieved (even if this Order is complied with) from liability to pay civil penalties of not more than $25,000 per day of violation for violations of section 112(c) of the Clean Air Act and its implementing regulations, or from complying with other Federal, State, or local laws.

Questions concerning this Order should be addressed (for legal matters) to Barbara J. Lither, attorney at 442-1275, or (for technical matters) Mark H. Hooper, Chief, Air Compliance Section, at 442-1387.

SEP 17 1979
Date

Donald P. Dubois
Regional Administrator

U. S. Environmental P[illegible]tion Agency [illegible] 1, 1979
Attn: Mark H. Hooper, [illegible] Stop 513
1200 Sixth Avenue
Seattle, Washington 98101

OCT - 4 1979

Dear Mr. Hooper

We are in receipt of EPA letter dated September 17, 1979 with compliance order No. X79-08-14-113.

MBK Company plans the following for disposal of asbestos waste which we estimate to not exceed two (2) ton.

1. Submit to the DEQ a letter of intent to set aside disposal areas in deed restriction to insure no building or digging be done.

2. Remove the asbestos from standing buildings by wetting and bagging. Workers will be supplied with respirators, gloves, and outerwear. Those bags and already collected bags will be placed in basement areas to be agreed to by DEQ.

3. Heavy equipment will scrape the already demolished sites and push the asbestos contaminated material into same basements. Workers will again have proper equipment. Sites will be watered by firetruck and with help from natural precipitation this fall.

4. Asbestos warning signs will be placed in the area while work is being done. This area has a security guard on duty. Road access into the property is secured and posted.

5. When property is subdivided, deed restriction will be placed in disposal areas.

6. After all the disposal of material, asbestos, and soil in the basement, there will be a 2foot fill over the sites. Vegetation will eventually be planted in the fill and the sites will become parks.

7. The asbestos warning signs will be removed after 2 feet of fill is completed.

In your compliance order you indicate that we cannot burn, we request this order be lifted as tons of scrap lumber can be sorted out from other debris and then burnt with permits from the local authorities. In addition to this one building has collapsed into a 10 foot old swimming pool. To extract this debris would be quite hazardous to workers. Local DEQ permit to burn is being requested at this time on this one building.

Your compliance order refers to 40 CFR S 61.25 and indicated you were enclosing a copy. Your office did not do this, may I have a copy for reference.

Sincerely,

M. E. Bercot

M. E. BERCOT
Partner, MBK Co.
5323 South Sixth St
Klamath Falls, Oregon 97601

CC: DEQ, Klamath Falls, Oregon